**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

TRIANGLE CAYMAN ASSET COMPANY 2,

    **Plaintiff**,

        **v.**

PROPERTY RENTAL AND INVESTMENT, CORP., *et al.*,

    **Defendants.**

**Civil No.** 16-2556 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is Property Rental and Investment, Corp. ("Property Rental"), Adrian Stella-Arroyo ("Stella"), Chardon Plaza, Inc. ("Chardon Plaza"), and Bowling Center Inc. ("Bowling Center") (collectively, "defendants")'s motion to dismiss plaintiff Triangle Cayman Asset Company 2 ("Triangle Cayman")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). (Docket No. 45.) Also before the Court is Triangle Cayman's motion to dismiss defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket No. 34.) For the reasons set forth below, defendants' motion to dismiss the complaint is **DENIED**, and Triangle Cayman's motion to dismiss the counterclaims is **GRANTED**.

## I.    Factual Background

This matter concerns five loans that Westernbank Puerto Rico ("Westernbank"), Triangle Cayman's predecessor in interest, issued to Property Rental and defendant Stella between 2005 and 2009. (Docket No. 1 at p. 19.)  A loan agreement was executed in connection with each of these loans.  Id.  Each loan agreement comprises a finance contract outlining the general terms of the loan, and a security interest agreement setting forth the terms of repayment and collateral.  Id.

### A.    The Loan Agreements

#### 1.    Loan Agreement I

On March 30, 2005, Westernbank and Property Rental executed a loan agreement pursuant to which terms Westernbank loaned Property Rental $825,000 (hereinafter, "Loan Agreement I"). (Docket No. 18, Ex. 1.)  As collateral, Property Rental provided Westernbank with a mortgage note for the principal amount of the loan.  Id. at p. 2.  The finance contract corresponding to Loan Agreement I does not contain a forum selection clause.  In the corresponding security interest agreement, however, the parties stipulated that "[i]n the event of litigation, [Property Rental] agrees to submit, and it does hereby submit, to the jurisdiction of the Court in Puerto Rico selected by [Westernbank], [Property

Rental] expressly waiving the right it may have to sue in the Court of its domicile." (Docket No. 18, Ex. 14.).

### 2. Loan Agreement II

On December 16, 2005, Westernbank and Property Rental executed a second loan agreement pursuant to which terms Westernbank loaned Property Rental $2,450,000 (hereinafter, "Loan Agreement II").[1] (Docket No. 18-7.) Property Rental pledged six promissory notes for various amounts to serve as collateral. (Docket No. 1 at pp. 8—9.) The finance contract concerning Loan Agreement II does not contain a forum selection clause. In the security interest agreement concerning Loan Agreement II, Westernbank and Property Rental stipulated that "in the event of litigation, [Property Rental], agrees to submit, and it does hereby submit, to the jurisdiction of the Court in Puerto Rico selected by [Westernbank.]") Id. at p. 3.

### 3. Loan Agreement III

On November 30, 2009, Westernbank and Property Rental executed a third loan agreement pursuant to which terms Westernbank loaned Property Rental $500,000 (hereinafter, "Loan

---

[1] Loan Agreement II amended a previous loan agreement executed in 2001 pursuant to which Property Rental borrowed $3,500,000 from Westernbank. (Docket No. 1 at p. 4.) Based on Triangle Cayman's allegations, either Property Rental repaid a fraction of the loan, or the parties reached an alternative repayment plan because Loan Agreement II increased "the [loan] amount [by] $1,528,640, for the total sum of $2,450,000," which is less than the $3,500,000 initially borrowed by defendants. Id.

Agreement III"). (Docket No. 18, Ex. 7.) Property Rental provided two mortgage notes as collateral for the $500,000 loan. Id. at pp. 3—4. Westernbank and Property Rental did not include a forum selection clause in the finance contract for Loan Agreement III, agreeing only that "[t]his contract will be interpreted and fulfilled in accordance with the laws of the Commonwealth of Puerto Rico." Id. at p. 14. In the security interest agreement pertaining to Loan Agreement III, Property Rental affirmed that "in the event of litigation, [Property Rental would] submit, and it does hereby submit to the jurisdiction of the General Court of Justice, Court of San Juan, Puerto Rico, [Property Rental] expressly waiving the right it may have to be sued in the Court of its domicile." Id. at p. 5.

### 4.   Loan Agreement IV

On March 15, 2004, Westernbank and defendant Stella executed a loan agreement whereby Westernbank loaned defendant Stella $1,500,000 (hereinafter, "Loan Agreement IV"). (Docket No. 18, Ex. 40.) Defendant Stella submitted a mortgage note and an assignment of rental income in favor of Westernbank to secure the $1,500,000 loan. (Docket No. 1 at p. 10.) Defendant Stella and Westernbank amended Loan Agreement IV on April 26, 2006 and on December 27, 2007, modifying the interest rate and due date for the principal and interest of the loan. Id. Neither the original

contract nor the amendments to Loan Agreement IV included a forum selection clause. In the security interest agreement concerning Loan Agreement IV, the parties stipulated that "[i]n the event of litigation, [defendant Stella] agrees to submit, and it does hereby submit, to the jurisdiction of the Court in Puerto Rico selected by Westernbank, [defendant Stella] expressly waiving the right it may have to sue in the Court of its domicile."[2] (Docket No. 18, Ex. 37.)

### 5. Loan Agreement V

On November 30, 2009 defendant Stella borrowed $2,300,000 from Westernbank (hereinafter, "Loan Agreement V"). (Docket No. 18, Ex. 12.) Defendant Stella submitted a mortgage note and a promissory note to serve as collateral for Loan Agreement V. Id. at p. 3. Westernbank and defendant Stella did not include a forum selection clause in the finance contract for Loan Agreement V, agreeing only that "[t]his contract will be interpreted and fulfilled in accordance with the laws of the Commonwealth of Puerto Rico." Id. at p. 12. In the corresponding

---

[2] The finance contract and all additional documents concerning Loan Agreement IV, with the exception of the security interest agreement, state that defendant Stella borrowed $1,500,000 from Westernbank. (Docket No. 18, Exs. 9, 10, 11, 37 & 40.) The security interest agreement, however, specifies that defendant Stella borrowed $2,500,000. (Docket No. 18, Ex. 9.) Triangle Cayman and defendants concur, however, that the amount borrowed by defendant Stella in Loan Agreement IV is $1,500,000. (Docket No. 1 at p.5; Docket No. 25 at p. 6.) Consequently, the Court will construe the $2,500,000 amount referred to in the security interest agreement concerning Loan Agreement IV as a clerical error.

security interest agreement, Westernbank and defendant Stella stipulated that "[i]n the event of litigation, [defendant Stella] agrees to submit and does hereby submit to the jurisdiction of the General Court of Justice, Court of San Juan, Puerto Rico, [defendant Stella] expressly waiving the right [he] may have to be sued in the Court of its domicile." (Docket No. 18, Ex. 42.)

**B.    Additional Parties to the Loan Agreements and Default by Defendants**

In sum, there are a total of 14 mortgage notes that serve as collateral for the five loans. (Docket No. 1 at p. 16.) Between 2001 and 2009, Bowling Center, Chardon Plaza, and defendant Stella (in his individual capacity) jointly and severally guaranteed to Westernbank the payment of all obligations arising pursuant to the loan agreements. (Docket No. 1 at p. 16-18.)

Westernbank ceased operations in 2010, when the Commissioner of Financial Institutions named the Federal Deposit Insurance Corporation ("FDIC") to serve as receiver. Id. at p. 2. In 2014, Banco Popular and Triangle Cayman executed an assignment and assumption agreement pursuant to which terms Triangle Cayman acquired the five loan agreements.[3] Id.

---

[3] The complaint does not describe the manner in which Banco Popular acquired the loans from the FDIC, or whether the loans were first sold to an unnamed entity. This omission is immaterial at this stage of the litigation. For purposes of the motions to dismiss, all parties are in agreement that Banco Popular sold the loans to Triangle Cayman.

According to Triangle Cayman, defendants defaulted on all five loans, collectively failing to pay approximately $6,545,454 in principal and an additional $1,879,583 in interest. Id. at p. 18—23. Triangle Cayman informed defendants that they remained in default by a letter dated May 17, 2016, and demanded the immediate payment of all loans.[4] Id. at p. 18. Consequently, Triangle Cayman sets forth two causes of action for the collection of monies and the foreclosure of collateral. Id. at p. 20.

### C.  The Counterclaims

Defendants aver that before Triangle Cayman purchased the five loan agreements, Banco Popular and defendants negotiated for two years to establish a discounted "pay-off of the loans." (Docket No. 25 at p. 30.) Defendants obtained financing for the discounted repayment plan from First Bank of Puerto Rico ("First Bank"), and conducted appraisal reports, title searches and other tasks in furtherance of an agreement with Banco Popular. Id. at p. 31. Defendants and Banco Popular scheduled the "closing date to execute the agreement for October 22, 2015." Id. The day before the closing, however, Banco Popular notified defendants that Triangle Cayman purchased the debt belonging to defendants. Id. Accordingly, defendants assert counterclaims for tortious

---

[4] Every loan agreement provided that in the event of default, all of defendants' obligations would immediately become due. (Docket No. 1.)

inference with contractual relations and "contract in the prejudice of a third person." Id. at pp. 33—34. Defendants claim they suffered $5,000,000 in real damages and $5,000,000 in damages for the emotional and mental anguish suffered by defendant Stella. Id. at p. 34.

## II. Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(1)

Defendants move to dismiss the causes of action arising from Loan Agreements III and V pursuant to Rule 12(b)(1).[5] (Docket No. 45.) Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction.[6] According to defendants, the forum selection clauses set forth in the security interest agreements corresponding to Loan Agreements III and V "require that any and all litigations thereunder be filed

---

[5] Triangle Cayman opposed the motion to dismiss. (Docket No. 50.)

[6] Defendants invoke Rule 12(b)(1) as the basis for dismissal of Triangle Cayman's collection of monies and foreclosure of collateral causes of action. (Docket No. 45.) The First Circuit Court of Appeals has held, however, that motions to dismiss on the basis of forum selection clauses are properly governed by Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Lambert v. Kysar, 983 F.2d 110, 112 (1st Cir. 1993) (concluding that the "forum selection clause [was] valid, exclusive and enforceable" in ruling on a motion brought pursuant to Rule 12(b)(6)); see Action Corp. v. Toshiba Am. Consumer Prods., Case No, 97-1134 (PG), 875 F. Supp. 2d 170 (D.P.R. 1997) (Perez-Gimenez, J.) (determining the enforceability of a forum selection clause in ruling on a motion to dismiss pursuant to Rule 12(b)(6)). Accordingly, Rule 12(b)(6) will control this Court's analysis of the enforceability of the forum selection clauses at issue. Rule 12(b)(6) allows a court to dismiss a complaint when the pleading fails to state a claim upon which relief can be granted. The Court views "the facts of the complaint in the light most favorable to the plaintiffs, and [. . .] resolve[s] any ambiguities in their favor." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011).

before the Puerto Rico Court of First Instance."[7]  (Docket No. 45

at p. 1.)   The two forum selection clauses cited by defendants

state that:

> In the event of litigation, [Property Rental] agrees to
> submit and it does hereby submit to the jurisdiction of
> the General Court of Justice, Court of San Juan, Puerto
> Rico, [Property Rental] expressly waiving the right it
> may have to be sued in the Court of its domicile.

(Docket No. 188, Ex. 33 at p. 5; Docket No. 18, Ex. 42 at p. 4.)

Defendants' arguments regarding a purported lack of jurisdiction

are meritless.

## A.    Standard of Review

It is well settled that forum selection clauses are

"*prima facie* valid and should be enforced unless enforcement is

shown by the resisting party to be 'unreasonable' under the

circumstances."  <u>Silva v. Encyclopedia Britannica, Inc.</u>, 239 F.3d

385, 386 (1st Cir. 2001) (quoting <u>M/S Bremen v. Zapata Off-Shore

Co.</u>, 407 U.S. 1, 10 (1972)); <u>see</u> <u>Stereo Gema, Inc. v. Magnadyne

Corp.</u>, 941 F. Supp. 271, 276 (D.P.R. 1996) (Lafitte, J.) (noting

---

[7] The security interest agreements pertaining to Loan Agreement III and V are
separate from the complaint.  The Court recognizes that "[t]he fate of a motion
to dismiss generally depends on allegations contained within the four corners
of the complaint, but may be expanded to include undisputed information
contained within exhibits attached to or referenced in the complaint." <u>Young
v. Lapone</u>, 305 F.3d 1, 11 (1st Cir. 2002).  Both Triangle Cayman and defendants
attached the security interest agreements as exhibits to the complaint and
answer, and referred to the forum selection clauses in their responsive
pleadings. (Docket Nos. 1, 18 & 25.)  The Court deems that the security interest
agreements constitute undisputed information incorporated into the complaint by
the parties.  Consequently, the Court will review the security interest
agreements as an extension of the complaint for purposes of the Rule 12(b)(6)
motion.

that the Puerto Rico Supreme Court adopted the federal approach to the enforcement of forum selection clauses) (citations omitted). Moreover, courts enforce forum selection clauses unless the resisting party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Zapata, 407 U.S. at 15. In contesting the validity of a forum selection clause, the resisting party bears a "heavy burden of proof." Id. at 17.

Forum selection clauses do not "oust the jurisdiction of this [C]ourt; in effect [they] merely constitute a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise jurisdiction."[8] Silva, 239 F.3d at 388 (internal citation omitted). Mindful that the validity of a forum selection clause is considered separately from the validity of the underlying contract, Intercall Commc'ns v. Instant Impact, Inc., 376 F. Supp. 2d 155, 160 (D.P.R. 2005) (Garcia-Gregory, J.), the Court now addresses the forum selection clauses in connection with Loan Agreements III and V.

---

[8] Parties to a contract cannot strip a federal court of jurisdiction because the United States Constitution provides that "the judicial power of the United States shall be vested in one supreme Court, and in such inferior Courts as Congress may from time to time ordain and establish." U.S. CONST. art. III. Only the United States Congress possesses the authority to define, expand or limit federal jurisdiction. Triangle Cayman invokes this Court's diversity jurisdiction, alleging complete diversity of citizenship among the parties, and that the amount in controversy exceeds $75,000. (Docket No. 1 (citing 28 U.S.C. § 1332.)) Consequently, the Court is satisfied that, based on the allegations set forth in the complaint, diversity jurisdiction exists.

**B.  Discussion**

Defendants request dismissal because, they argue, the forum selection clauses require the parties to litigate in state court.  (Docket No. 45.)  Courts have recognized two forms of forum selection clauses:  permissive and mandatory.  Permissive forum selection clauses are "often described as 'consent to jurisdiction' clauses, [and] authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009) (distinguishing permissive and mandatory forum selection clauses) (citing 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)).  In contrast, mandatory forum selection clauses "contain clear language indicating that jurisdiction and venue are appropriately and exclusively in the designated forum."  Id.  In order to determine whether a forum selection clause's language is permissive or mandatory, courts examine the relevant contract in its entirety because "there is no general rule for forum-selection clauses."  Id. at 388.  Preclusive language such as "shall" and "must" suggests that the clause is mandatory.  See Claudio-de Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014) (interpreting contractual language stating that litigation "shall be submitted to the jurisdiction and competence of the Court

of First Instance of the Commonwealth of Puerto Rico, San Juan Part" constituted a mandatory forum selection clause).  The disposition of defendants' motion to dismiss is contingent on whether the forum selection clauses are mandatory or permissive.  To prevail on their motion to dismiss, defendants must demonstrate that Property Rental and Westernbank agreed that the General Court of Justice in San Juan, Puerto Rico would serve as the exclusive forum in the event of litigation relating to Loan Agreements III and V.  Defendants have failed in this endeavor.

In Bautista Cayman Asset Co. v. Maeso-Ensenat, the Court reviewed a forum selection clause with language nearly identical to the forum selection clauses at issue in this case.  Case No. 16-2182 (ADC), 2017 U.S. Dist. LEXIS 53119 (D.P.R. Mar. 30, 2017) (Delgado-Colon, J.).  The forum selection clause in Bautista Cayman Asset Co. stated that:

> In the case of any litigation arising in relation to this contract, to the Loan or the other documents related to it, the parties submit themselves to the jurisdiction of the General Court of Justice of Puerto Rico.

Id. at *4.  Consistent with First Circuit Court of Appeals precedent, the Bautista Cayman court held that the clause was "an affirmative conferral of personal jurisdiction by consent, and not a negative exclusion of jurisdiction to other courts."  Id. (citing Autoridad de Energia Electrica de Puerto Rico v. Ericsson Inc., 201 F.3d 15, 19 (1st Cir. 2000) (holding that a forum selection

clause stating that "[t]his contract will be governed and interpreted pursuant to the Laws of the Commonwealth of Puerto Rico and the parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico" did not prohibit litigation in federal district court)). The Court is compelled to reach the same conclusion in this case, which is that the forum selection clauses are permissive.

Defendants suggest that because Property Rental agreed "to submit" to state court jurisdiction, and waived its right "to be sued in the [c]ourt of its domicile," the forum selection clauses are mandatory. (Docket No. 45 at p. 7.) This argument misses the mark. Property Rental may have agreed to "submit" to the General Court of Justice, but it does not follow that the General Court of Justice would be the exclusive forum concerning Loan Agreements III and V. (Docket No. 188, Ex. 33 at p. 5; Docket No. 18, Ex. 42 at p. 4.) Absent from the forum selection clauses are words such as "shall" and "must," indicating that the forum selection clause is permissive. Mere consent to jurisdiction in one court does not strip the jurisdiction of another.[9]

---

[9] The forum selection clause at issue in In re J.R. Insulation Sales & Serv. 482 B.R. 47 (Bankr. D.P.R. 2012) (Casellas, J.) is an illustrative example of a mandatory forum selection clause. The forum selection clause in In re J.R. Insulation Sales & Serv. stated that:

Consequently, the forum selection clauses pertaining to Loan Agreements III and V are permissive. Because defendants' motion to dismiss is premised on a misguided interpretation of these forum selection clauses, defendants' motion to dismiss is **DENIED**.

## III. Plaintiff's Motion to Dismiss the Counterclaims

Triangle Cayman moves to dismiss defendants' counterclaims for tortious interference with contractual relations and formation of a contract prejudicial to a third person pursuant to Rule 12(b)(6).[10] (Docket No. 34.) Defendants argue that Triangle Cayman impermissibly interfered with a contract between defendants and Banco Popular, denying defendants the opportunity to repay all outstanding debt at a discount. (Docket No. 25 at pp. 30 – 35.) Triangle Cayman asserts that the counterclaims fail, however, because defendants neglected to allege the existence of legally cognizable contract with Banco Popular with which Triangle Cayman could interfere. (Docket No. 34.) The Court agrees.

---

This contract shall be subject to, and interpreted by the state laws of Puerto Rico. Additionally, the contracting parties expressly agree that the state courts of Puerto Rico, **only**, shall be the courts with competent and **exclusive jurisdiction** to resolve the controversies which arise between them in relation to this Contract and which require for its elucidation the intervention of the judicial authority.

Id. at 50. (affirming bankruptcy court's holding that the forum selection clause is mandatory) (emphasis added).

[10] Defendants opposed the motion to dismiss the counterclaims. (Docket No. 74.)

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Resolving a motion to dismiss requires a two-step approach. First, a court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, a court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief." Id. "The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14 (2007).

### B.   Tortious Interference with a Contractual Relationship

To establish a tortious interference counterclaim, defendants must allege: (1) the existence of a contract, (2) that

Triangle Cayman interfered with the contract, (3) that Triangle Cayman was at "fault," (4) that defendants suffered damages, and (5) that a causal link exists between defendants' damages and Triangle Cayman's fault.[11]  Geva Eng'g Group, Corp. v. Furmanite Am., Inc., 844 F. Supp. 225, 229 (D.P.R. 2012) (Besosa, J.)).

Defendants' tortious interference counterclaim does not satisfy the Rule 12(b)(6) pleading standard because defendants fail to allege the existence of a contract adequately, an essential element of the claim. Pursuant to Puerto Rico Law, "a contract has three elements:  consent, a definitive (and legal) object, and consideration." TC Invs., Corp. v. Becker, 733 F. Supp. 2d. 266, 278 (D.P.R. 2010) (Besosa, J.) (holding that phrase stating that "[a]s part of our acceptance to your offer, we agree to assume all liability" demonstrated the existence of a contract") (internal citation omitted).  "Consent is shown by the concurrence of the

---

[11] Defendants cite to no specific statute in support of their counterclaims.  A federal court sitting in a diversity case must apply the substantive law of the forum where the action is filed.  Semtek Int'l. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 498, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001); Borschow Hosp. & Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996) (noting that Puerto Rico federal courts sitting in diversity jurisdiction, "[e]schew common law principles of contract interpretation in favor of [. . .] [the] civil code derived from Spanish law") (citing Guevara v. Dorsey Labs., Div. of Sandoz, Inc., 845 F.2d 364, 366 (1st Cir. 1988))).  The tortious interference of contractual relations claim arises pursuant to article 1802 of the Puerto Rico Civil Code, which provides in pertinent part that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repay the damage so done."  Laws of P.R. Ann. tit. 31 § 5141; New Comm Wireless Servs. v. Sprintcom, Inc., 287 F.3d 1, 9 (1st Cir. 2002); citing General Office Products Corp. v. A.M. Capen's Sons, Inc., 115 D.P.R. 553, 115 P.R. Offic. Trans. 727, 734 (1984) (setting forth the five elements of a tortious interference of contractual relations claim).

offer and acceptance of the thing and the cause which are to constitute the contract." Marrero-Garcia v. Irizarry, 33 F.3d 117, 122 (1st Cir. 1994) (quoting Laws of P.R. Ann. tit. 31 § 5141).

In Puerto Rico, "an agreement can be binding without executed documentation if, *inter alia*, the parties have a 'meeting of the minds expressed through the offer and the acceptance.'" Ysiem Corp. v. Comm. Net Lease Realty, Inc., 328 F.3d 20, 23 (1st Cir. 2003) (citing Producciones Tommy Muñiz, Inc. v. Comite Organizador de los VIII Juegos Panamericanos, 13 P.R. Offic. Trans. 664, 113 P.R. Dec. 517 (1982). Moreover, "it is not necessary for an offer to specify every detail, if such details can be ascertained from other sources, and the parties were clear about them." Citibank Global Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 25 (1st Cir. 2009). "[T]he Supreme Court of Puerto Rico has emphasized that if what is affected is a 'mere expectancy or a profitable financial relationship,' an action for tortious interference cannot lie." Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV, 828 F. Supp. 2d 425, 430 (D.P.R. 2011) (Besosa, J.) (quoting Dolphin Int'l of P.R. v. Ryder Truck Lines, 127 P.R. Dec. 869, 882-83 (P.R. Jan. 31, 1991).

Defendants mistake negotiations in furtherance of an agreement with a contract. According to defendants, Banco Popular

acquired the debt owed by defendants from Westernbank in 2010. (Docket No. 25 at p. 30.) Triangle Cayman purchased this debt from Banco Popular in November of 2015. (Docket No. 1. at p. 2.) Defendants allege that for two years prior to Triangle Cayman's acquisition of this debt, they and Banco Popular "negotiated" and continued communicating and exchanging information to execute the closing of the Agreement." (Docket No. 25 at pp. 30—31.) Notably, defendants acknowledge that the closing never occurred, and that they and Banco Popular never executed a written agreement modifying the repayment of the loans. Id. at 30-32.

Indeed, the allegations set forth in the counterclaim suggest that defendants and Banco Popular had an expectancy to reach an agreement, not a meeting of the minds. The "agreement" that defendants refer to in the counterclaim does not describe a contract, but rather an agreement to negotiate. By way of example, defendants allege that the "principle [sic] terms of the Agreement were detailed in a term letter dated July 10, 2015." Id. at p. 30. This term letter, however, served:

> as an expression of interest to proceed with the proposed Settlement Transaction and **is not intended to constitute a binding obligation on the party of either party** to consummate the Settlement Transaction. The Settlement Transaction will only be effective upon the execution by the Borrower group and Banco Popular of the Settlement Agreement.

(Docket No. 34-1 at p. 3) (emphasis added).[12]

        In light of defendants' failure to plead the existence

of a contract with which Triangle Cayman interfered adequately,

the tortious interference with contractual relations counterclaim

is **dismissed with prejudice.**

        **C.   Contract Prejudicial to a Third Party**

        To substantiate a cause of action for a contract

prejudicial to a third party, defendants must demonstrate:

> (1) that a third party be affected; (2) that damage be
> caused to a third party; (3) that there be proximate
> cause between the damage and the contract; (4) that the
> intent to cause damage exists, be it on the part of both
> contracting parties or just one of them.

Twin County Grocers, Inc., v. Mendez & Co., 81 F. Supp. 276, 292

(D.P.R. 1999) (Dominguez, J.) (addressing a contract prejudicial

to a third party claim in the summary judgment context) (citing

Dennis Metro Invs. v. City Fed. Savs., 21 P.R. Offic. Trans. 186,

202 (P.R. 1988)).

---

[12] In deciding a motion to dismiss, a court may "[o]rdinarily . . . not consider
any documents that are outside of the complaint, or not expressly incorporated
therein, unless the motion is converted into one for summary judgment."
Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33
(1st Cir. 2001). "When the complaint relies upon a document, whose authenticity
is not challenged, such a document 'merges into the pleadings' and the court
may properly consider it under a Rule 12(b)(6) motion to dismiss." Alternative
Energy, Inc., 267 F.3d at 33 (quoting Beddall v. State St. Bank & Trust Co.,
137 F.3d 12, 17 (1st Cir. 1998)). Neither defendants nor Triangle Cayman
dispute the authenticity of the term letter referred to in both parties'
pleadings and attached as an exhibit to Triangle Cayman's motion to dismiss.
(Docket No. 34-1.) Accordingly, the term letter "merged into the pleadings"
and may properly be considered by the Court.

Defendants have failed to allege sufficient facts to raise their "right to relief" for contract in the prejudice of a third person "above the speculative level." <u>Twombly</u>, 550 U.S. at 555. Instead, they allege that: (1) the plaintiffs "had knowledge" of the negotiations that had taken place between Banco Popular and defendants; (2) were "prejudiced" by, and "suffered injuries" as a result of Triangle Cayman's contract with Banco Popular; and (3) Triangle Cayman "acted knowingly and willfully" in executing a contract with Banco Popular that prejudiced defendants. (Docket No. 25 at 33.) Such bare, conclusory allegations are insufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). <u>See, e.g.</u>, <u>Schatz</u>, 669 F.3d at 55.

To plead an adequate claim for contract in the prejudice of a third person, the defendants must allege **facts** that, if proven, would satisfy each element of the claim. Their failure to do so compels the Court to **dismiss** their counterclaim for contract in the prejudice of a third person with prejudice. [13]

---

[13] Defendant request damages in connection the tortious interference with contractual relations and contract prejudicial to a third person causes of action. (Docket No. 25 at p. 34.) Defendants refer to their request for damages as the "third cause of action," without setting forth the specific legal theory upon which this cause of action is premised. On this basis alone, dismissal is warranted. <u>See</u>, <u>e.g.</u>, <u>Bautista Cayman Asset Co. v. Reliance Mfg.</u>, Civ. No. 16-1418, 2017 U.S. Dist. LEXIS 8375, at *5 (D.P.R. Jan. 20, 2017) (Besosa, J.) ("As a result of Reliance's failure to identify a cause of action, the counterclaim must be dismissed."). To the extent that their cause of action for damages is based on their other two counterclaims, dismissal is warranted because these other two counterclaims are inadequately pled.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** defendants' motion to dismiss pursuant to Rule 12(b)(1). Triangle Cayman's motion to dismiss the counterclaims pursuant to Rule 12(b)(6) is **GRANTED**. Defendants counterclaims for tortious interference with contractual relations, contract prejudicial to a third party, and damages are **DISMISSED WITH PREJUDICE.**

Partial Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 30, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE